# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| TRENISA ANDERSON and MARCUS ANDERSON, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 1:17-cv-01171-STA-egb ) |
| J.R.'S AUTO SALES OF UNION CITY, LLC; et al. | ) ) ) ) |
| Defendants. | ) |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING STATE LAW CLAIMS WITHOUT PREJUDICE

Before the Court is Defendants Hopkins Investments II; J.R. Allen, individually and d/b/a Hopkins Investment 2; and Allen Brothers' Motion to Dismiss (ECF No. 32) filed on February 9, 2018. Plaintiffs Trenisa Anderson and Marcus Anderson have responded in opposition, and Defendants have filed a reply brief. For the reasons set forth below, Defendants' Motion is **GRANTED**.

## BACKGROUND

This case involves an automobile transaction gone wrong. In November 2014 Plaintiff Trenisa Anderson contracted for a 2005 Chrysler 300 from J.R.'s Auto Sales in Union City, Tennessee. While Plaintiffs maintain that Ms. Anderson purchased the car, Defendants respond that the transaction was a lease. The Amended Complaint alleges that Plaintiff signed some documents related to a purchase of the vehicle and other documents related to a lease of the vehicle. (Am. Compl. ¶ 28.) The documents stated that the vehicle's value was $10,995.00 with a gross

1

capitalized cost of $15,697.50. (*Id.* ¶ 20.) The parties' agreement called for Plaintiff to make an initial payment of $169.56 and then 129 bi-weekly payments in the amount of $169.50. (*Id*. ¶ 23.) Plaintiff traded a 1998 Ford Expedition as part of the transaction. (*Id*. ¶ 19.)

J.R.'s Auto Sales assigned its agreement with Ms. Anderson to Hopkins Investments II. (*Id*. ¶ 26.) As part of the paperwork she signed, Ms. Anderson signed a document titled the "Payment Protection System (GPS)." (*Id*. ¶ 30.) The document stated that Ms. Anderson agreed to have a GPS device installed on the automobile for the purpose of ensuring that she "made [her] payments on time and in accordance with the Retail Installment Sales Agreement." (*Id*. ¶ 31.) Plaintiff took delivery of her vehicle and made timely payments through August 30, 2015. (*Id*. ¶ 37.) Plaintiff's payments were accepted by Hopkins Investments II and/or J.R. Allen, and her payments made with her credit card were processed by Allen Brothers. (*Id*. ¶ 36.)

In early September 2015, an unknown agent of one of the Defendants notified Plaintiff that she was delinquent in her payments. (*Id*. ¶ 38.) Plaintiff denied that she was behind in her payments and spent several days attempting to contact Defendants to clarify the status of her account. (*Id*. ¶ 39.) Then on September 14, 2015, while Plaintiff's son, a college student, was using the car in Murfreesboro, Tennessee, an agent of one Defendant remotely disabled the vehicle, which was parked in a Wal Mart parking lot at the time. (*Id*. ¶ 40.) According to Plaintiff, Defendants provided her with no notice of this action and otherwise failed to comply with the procedures described in the agreement between Plaintiff and J.R. Auto Sales. (*Id*. ¶¶ 41-42.) After continuing to attempt to resolve the dispute but without success, Plaintiff notified Defendants on September 19, 2015, that she was cancelling her insurance coverage for the auto and notified Defendants that the disabled vehicle was still parked in the Wal Mart parking lot. (*Id*. ¶ 46.) The car continued to sit in the same location for nearly a month. (*Id*. ¶ 49.)

On February 6, 2016, an unknown agent of Hopkins Investments II swore out a criminal complaint against Ms. Anderson, affirming that the remote GPS tracking system was no longer working and that the vehicle could not be located. (*Id*. ¶ 50.) A warrant was issued for Ms. Anderson's arrest on the charge of theft over $10,000, a Class C felony. (*Id*. ¶ 51.) Defendants subsequently recovered the car and leased or sold it to another individual in May 2016. (*Id*. ¶ 54.) Even though Defendants regained possession of the car, Defendants did not notify law enforcement. (*Id*. ¶ 55.) The warrant therefore remained active, and Ms. Anderson was arrested on the charge in September 2016, despite the fact that the car continued to be sold more than one time after it left her custody and control. (*Id*. ¶ 56-58.) The charge against Ms. Anderson was dismissed on September 29, 2016. (*Id*. ¶ 59.) The Amended Complaint alleges that Defendants regularly use similar practices against other customers as part of their normal business operations.

Plaintiffs filed their suit on September 4, 2017, and an Amended Complaint on November 21, 2017. The Amended Complaint alleges a class action on behalf of all

> individuals who contracted with one or more of the Defendants, and tendered payments to them, and 1) the Defendant(s) sought to bring criminal charges after breach of a contract; 2) failed to abide by the requirements of the Fair Debt Collection Practices Act, federal or state law in the manner and method of collection on the debt; 3) Defendants sought collection from an individual in such way that constitutes harassment, wrongful repossession, or resulted in injury to the individual; 4) Defendants failed to abide by Tennessee law in the repossession and resale of a leased vehicle; or 5) Defendants failed to abide by Tennessee law in the terms of the lease agreement.

In a series of numbered counts, the Amended Complaint alleges the following causes of action against Defendants: the violation of 42 U.S.C. § 1983 for Plaintiff Trenisa Anderson's false arrest and conspiracy; torts under Tennessee law of wrongful arrest/wrongful imprisonment; tortious conspiracy; the intentional infliction of emotional distress; the violation of the federal Fair Debt

Collection Practices Act; violations of several Tennessee statutes; wrongful trover/conversion; loss of consortium; and breach of contract.

In their Motion to Dismiss, Defendants Hopkins Investments II, J.R. Allen, and Allen Brothers argue that the Amended Complaint fails to state any of the claims against these Defendants. Defendants first contend that Plaintiff cannot hold them liable under 42 U.S.C. § 1983 because Defendants are not state actors and the Amended Complaint fails to allege with particularity the existence of any conspiracy under § 1983. Defendants next argue that they are creditors, and not "debt collectors" for purposes of the Fair Debt Collection Practices Act. As for Plaintiffs' claims under Tennessee law, Defendants argue that the Amended Complaint fails to allege essential elements of each cause of action. Plaintiffs have responded in opposition. Concerning Ms. Anderson's § 1983 claims, Plaintiffs argue that Defendants' business practices were the moving force behind the deprivation of Ms. Anderson's constitutional rights. As for her FDCPA claims, Plaintiffs stress that none of the moving Defendants were parties to the contract between Ms. Anderson and J.R. Auto Sales. Issues of fact remain over whether Defendants were creditors or "debt collectors" for purposes of the FDCPA. Plaintiffs go on to argue the sufficiency of their pleadings as to each of their claims under Tennessee law. Defendants have filed a reply, restating most of the arguments they presented in their opening brief.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992). However,

legal conclusions or unwarranted factual inferences need not be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim." *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555). In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

Plaintiffs have alleged a number of claims, both under federal law and state law. The Court analyzes the merits of each federal claim separately and then considers whether to exercise supplemental jurisdiction over Plaintiffs' claims under Tennessee law.

**I. 42 U.S.C. § 1983**

Section 1983 imposes liability on any "person who, under color of any statute, ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In order to

prevail on such a claim, a section 1983 plaintiff must establish "(1) that there was the deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right," *Humes v. Gilless*, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001), but creates a "species of tort liability" for the violation of rights guaranteed in the Constitution itself. *Manuel v. City of Joliet, Ill.*, 137 S.Ct. 911, 916 (2017) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976)). So the "threshold inquiry" under § 1983 is "to identify the specific constitutional right" at issue. *Id.* (quoting *Albright v. Oliver*, 510 U.S. 266, 271 (1994)). Then the court "must determine the elements of, and rules associated with, an action seeking damages for its violation." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 257–258 (1978)).

Plaintiff alleges that Defendants are liable under § 1983 for false arrest and conspiring to violate Ms. Anderson's constitutional rights. In this case the constitutional source of each of Plaintiff's § 1983 claims is the Fourth Amendment. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." *Id.* "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations and punctuation omitted). The Fourth Amendment also protects against arrest without probable cause. *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016) (citation omitted). To establish a § 1983 claim for false arrest, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Amis v. Twardesky*, 637 F. App'x 859, 861 (6th Cir. 2015) (quoting *Sykes v. Anderson*, 625 F.3d 294, 305

(6th Cir. 2010)). Probable cause simply means a "reasonable probability" that "under the totality of the circumstances" a suspect has committed a crime. *Courtright*, 839 F.3d at 521.

In this case the Court holds that Plaintiffs have failed to state a § 1983 claim against any of the moving Defendants. An essential element of the claim is state action, and none of the moving Defendants is a state actor for purposes of § 1983. Generally, one who acts "under color of state law" is a government official or other person employed in state or local government. In some cases, a private party may act under color of state law if the private party "acted together with or . . . obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). In other cases, a private party may be considered a state actor if he or she exercises powers traditionally reserved to the state. *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974). But in this case there are no allegations in the pleadings to suggest that any of the moving Defendants engaged in "state action." At best, Plaintiffs allege that an unknown agent of one or more the moving Defendants made a complaint to police and falsely accused Ms. Anderson of stealing the car. "Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law' even if the information provided is false." *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009). The Court concludes then that Plaintiffs have failed to state a § 1983 claim. Therefore, Defendant's Motion is **GRANTED** as to Plaintiffs' § 1983 claims.

Insofar as the Complaint can be read to allege a conspiracy claim under § 1983, the Complaint does not plausibly allege a civil conspiracy. The United States Court of Appeals for the Sixth Circuit has defined a civil conspiracy claim under § 1983 as follows:

7

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011) (quoting *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *accord Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). That pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). An assertion, unaccompanied by supporting facts, that parties conspired with each other, is a legal conclusion that a court need not accept as true. *Id.* at 563-64 (collecting cases). An allegation of "a plan or agreement to violate [the plaintiff's] constitutional rights" is required. *Id.* at 564. Here Ms. Anderson's allegation that Defendants conspired with each other is entirely devoid of supporting facts. As such, the Complaint fails to state a claim for civil conspiracy. Therefore, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiffs' civil conspiracy claim under § 1983.

**II. Fair Debt Collection Practices Act**

Plaintiffs' other cause of action under federal law is their claim that Defendants violated the Fair Debt Collection Practices Act ("the FDCPA"). Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). The FDCPA creates statutory rules for attempts to collect a debt and preserves for the consumer the right and the opportunity to dispute the validity of a debt. 15 U.S.C. § 1692g. As a threshold matter, the

consumer protections afforded by the FDCPA apply only to a "debt collector," meaning "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a. The statute's consumer protections do not apply to a "creditor," which the FDCPA defines as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a. By definition, a party "cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *Bridge v. Ocwen Fed. Bank*, 681 F.3d 355, 359 (6th Cir. 2012). The Supreme Court has simply framed the "debt collector" inquiry this way: whether the defendant "regularly seeks to collect debts for its own account or does so for 'another.'" *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017).

The Amended Complaint alleges that J.R.'s Auto Sales was the original party to Ms. Anderson's agreement for the car but assigned its rights in the agreement to Hopkins Investments II. Am. Compl. ¶ 24. The issue presented then is whether the facts alleged show that Hopkins Investments II as the assignee of Ms. Anderson's contract was a "debt collector." "For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired." *Bridge*, 681 F.3d at 359. The Amended Complaint alleges that the assignment occurred simultaneous with the execution of the agreement in November 2014 but that the violations of the FDCPA occurred beginning in September 2015, that is, before Ms. Anderson allegedly defaulted on the debt. The Court holds that the Amended Complaint has alleged that Hopkins Investments

9

II was acting as a "creditor," not as a "debt collector." Therefore, Plaintiffs cannot hold Hopkins Investments II liable for violations of the FDCPA.

This leaves Plaintiffs' FDCPA claims against Defendants J.R. Allen or Allen Brothers. The only allegation about these Defendants and their involvement in Ms. Anderson's dispute over her account is that Ms. Anderson had phone contact with and wrote letters to an unnamed person acting on behalf of one or all of the moving Defendants. The Amended Complaint alleges that the dispute over Ms. Anderson's payments began in September 2015 with a phone call from an agent of Hopkins Investments II, J.R. Allen d/b/a Hopkins Investments 2, "and/or" Allen Brothers. Am. Compl. ¶¶ 38, 39. This pleading in the alternative fails to put Defendants on notice of which Defendant engaged in the alleged conduct. Perhaps more importantly, the remainder of Ms. Anderson's allegations about her attempts to resolve the dispute over her debt all relate to "Hopkins Investments." *Id*. ¶¶ 43, 44. The Court holds that these allegations do not plausibly suggest that either J.R. Allen or Allen Brothers acted as a "debt collector." The Amended Complaint further alleges that Ms. Anderson's credit card payments on her account were processed by Allen Brothers, implying that Allen Brothers was a creditor collecting "debts for its own account." *Henson*, 137 S. Ct. at 1721. Moreover, the pleadings show that J.R. Allen and Hopkins Investments II are merely alter egos. The Amended Complaint alleges that Defendant J.R. Allen did business as Hopkins Investments 2 and that Hopkins Investments 2 was also known as Hopkins Investments II. In other words, the pleadings plausibly show that J.R. Allen and Hopkins Investments II are a single enterprise.[1] To the extent then that Hopkins Investments II was a

---

[1] The Amended Complaint does not allege whether Defendant Allen Brothers is a registered business organization or has any other legal status. The pleadings do allege that Hopkins Investments II and Allen Brothers have their principal place of business at the same address, 235 Westgate Drive, Union City, Tennessee.

"creditor," J.R. Allen also qualifies as a "creditor." For all of these reasons, Defendants' Motion to Dismiss Plaintiffs' FDCPA claims is **GRANTED**.

## III. Claims Under Tennessee Law

The remainder of Plaintiffs' claims arise under the laws of the state of Tennessee. The Court has discretion to take jurisdiction over these claims only by virtue of 28 U.S.C. § 1367(a), which grants district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Having dismissed the claims over which it has original subject-matter jurisdiction, the Court must next determine whether it should exercise supplemental jurisdiction over Plaintiffs' state law claims. "With respect to supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "[I]f there is some basis for original jurisdiction, the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012) (*Campanella v. Commerce Exch. Bank,* 137 F.3d 885, 892 (6th Cir. 1998)). However, district courts may decline to exercise supplemental jurisdiction over a related claim if any of the following apply:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Even when one of these statutory conditions applies, the district court may nevertheless exercise supplemental jurisdiction over state law claims "if recommended by a careful consideration of factors such as judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988). The district court enjoys "broad discretion" in this regard. *Phaneuf v. Collins*, 509 F. App'x 427, 434 (6th Cir. 2012) (citing *Musson Theatrical, Inc. v. Fed. Express Corp.,* 89 F.3d 1244, 1254 (6th Cir. 1996)).

The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims under Tennessee law. "When district courts dismiss all claims independently qualifying for the exercise of federal jurisdiction, they ordinarily dismiss as well all related state claims." *Artis v. Dist. of Columbia*, 138 S. Ct. 594, 597–98 (2018). In this case, Plaintiffs' § 1983 and FDCPA claims were the basis of the Court's federal question jurisdiction under 28 U.S.C. § 1331. The Court has concluded that the Amended Complaint fails to state a plausible claim under either federal statute. The Court would add that Plaintiffs have already voluntarily dismissed similar claims without prejudice against other Defendants in this case, preserving their right to raise the claims in a subsequent action. *See* Stip. of Dismissal as to Hopkins Investments, LLC and J.R. Allen Investments, LLC, Apr. 10, 2018 (ECF No. 47). Under the circumstances, the Court declines to retain jurisdiction over Plaintiffs' various Tennessee law claims. Therefore, the Court **DISMISSES** those claims without prejudice to re-file them in the courts of the state of Tennessee.

## CONCLUSION

The Amended Complaint fails to state a plausible claim for relief under 42 U.S.C. § 1983 or the federal Fair Debt Collection Practices Act. Defendants' Motion to Dismiss is **GRANTED** as to these claims, and the claims are dismissed with prejudice. The Court declines to exercise supplemental discretion over Plaintiffs' remaining claims under state law pursuant to 28 U.S.C.

1367 (c)(3). Plaintiffs' state law claims against these Defendants are dismissed without prejudice.

**IT IS SO ORDERED.**

                                        **s/ S. Thomas Anderson**
                                        S. THOMAS ANDERSON
                                        CHIEF UNITED STATES DISTRICT JUDGE

                                        Date: June 13, 2018.